Good morning. We are here today to hear Gutierrez-Alm versus Garland. Before we begin, Judge Thomas and I want to thank Judge Bennett from Maryland for helping us out today. It's an honor always to sit with the Ninth Circuit, Judge Lee. Thank you very much. I believe that Mr. Garcia, whenever you're ready, you may begin. If you want to reserve time for rebuttal, please watch the clock. You may be on mute, Mr. Garcia. We can't hear you. Can you hear me now? Yes, yes, we can. Yes, we can hear you. Not anymore. I think you're back on mute. Can you hear me now, judges? Yes, yes, I can hear you. I'm sorry. Can you hear me? Yes. Can you hear us? Yes, now I can. So, Judge, I'll start out with this. With respect to the stop time trigger rule, I think the thrust of my argument would be this. How can we deny a procedural right before the procedures even begin? I think we can all agree that an order to show cause, like a notice to appear, initiates the deportation proceedings, just like an NTA initiates the removal proceedings. However, nothing really begins until that time and place of proceedings are provided to an alien, like the court in Pereira said. Essentially, a notice to appear without the time and place of proceedings is just a piece of paper. And so what you have here is an order to show cause that was served on my client in 1993, but was not filed with the court until 1996, and then a hearing date and time and place provided at that time. So, again, nothing really begins with deportation proceedings until that time and place is provided to an alien. No legal consequences attach. No penalties can attach until that happens. You cannot be deported in absentia. For example, you cannot be deported in absentia. And you basically cannot have any penalties until that happens. Doesn't the decision in Pereira turn on the specific statutory language governing notices to appear? And we've got a different statute here. So can you just tell me why you think Pereira actually applies here? OK, yeah, Pereira, I'm not saying Pereira, you know, it says the notice to appear, the time and place has to be in the notice to appear. I understand that. But what I'm saying is that a notice to appear and an order to show cause are essentially the same. And so just because an order to show cause allows you to have the time and place of proceedings in a different other than the order to show cause, it's essentially still the same in substance, the same avenue that initiates both removal proceedings and deportation proceedings. Mr. Garcia, but to follow up on Judge Thomas's point, the Pereira decision by the Supreme Court turns specifically on the matter of the definition of a notice to appear and specifically requiring date and time information. Whereas the order to show cause does not turn upon date and time information specifically. Isn't that correct? That is correct, Judge. And I will concede that point, that an OSC does not require the time and place. It can be provided in a different notice of hearing. However, what I'm saying is that it's essentially the same thing. An OSC initiates the deportation procedures and nothing, there is no substance to a piece of paper that is titled order to show cause until the time and place of proceedings is provided to an alien. There are no legal consequences that can attach prior to that time. So yes, there is a distinction between an OSC and an NTA in theory, but in substance, they are identical. And that, again, that procedure cannot begin. There are no consequences until the time and place are provided. Now, I believe that allowing the stop time trigger rule to begin at the time of serving the time and place of proceedings is a fair outcome. I think it complies with due process so that we don't deny aliens rights before the procedures even begin. Because in this case, what happened was he was served with an order to show cause and almost three years later, then he got his time and place of proceedings. So, if we let this stand, then, again, his rights would have been curtailed, even before anything began with the immigration court. I think this is correct, but if it were wrong, please correct me. But the 2nd, 5th, 7th, 10th, and 11th circuits have all addressed this identical issue, correct, and have not ruled in your favor with respect to that argument, correct? Yes, Your Honor, but they've never analyzed the substance of it. I understand, but I'm just verifying that, to my knowledge, in the 9th circuit, this court has previously, in an unpublished memorandum disposition, has also held that PERA does not apply with respect to an order to show cause. So, you're flying in the headwinds of some other case law, are you not? I am, Your Honor, but none of them have presented the arguments I'm presenting now. All the cases, all they've said is basically, yes, an OSC is different than a notice to appear. That's all they've said. They said, okay, technically, the notice to appear does require the time and place in the notice to appear, and an OSC, an order to show cause, does not. That's all they've said. Even the case cited by counsel Jiang, there's absolutely no analysis whatsoever to the arguments I'm presenting now. Again, we're attaching legal consequences before the procedures even begin. I believe that's a violation of due process. It's completely unfair. And if you look at the NIS Chavez case, Your Honor, that actually expanded the rights of aliens, right? It allowed aliens to accrue more time for their applications for cancellation of removal. If we rule, in this case, if we rule that the service of the OSC, without the time and place, or without the time and place of proceedings, stops his accrual of time for suspension of deportation, then we are actually negating my client's rights. If I may interrupt, NIS Chavez Supreme Court also was really relying on the statutory language. There was the word Article A, a notice, and whether it had to be a single document or multiple documents. So in that case, again, I think the holding was tied to the specific statutory language and not some general, broader principle. So I don't know if that case really helps you either. Well, Judge, again, all the NIS Chavez case basically said was, yes, a notice to appear, the time and place has to be in the notice to appear. But if you look at some of the language, which I cited in my supplemental authorities, they understand that a notice to appear without time and place is just a piece of paper. And I'm saying the same thing with an order to show cause without the time and place of proceedings or a subsequent hearing notice is also only a piece of paper. And in this case, the subsequent hearing notice was not served until 1996, at which time my client had accrued the seven years for suspension of deportation. Thank you. You have about two minutes left, unless my colleagues have additional questions. Do you want to sit and reserve your time? I'll reserve my time, Your Honor. Great. Thank you. Good morning, Your Honors. May it please the court. Leslie McKay for the Attorney General. Your Honors, the court should deny the petition for review for two reasons. First, the agency correctly determined that petitioner is not eligible for suspension of deportation. And second, the agency reasonably determined that he'd failed to show a clear probability of future persecution or torture upon his return to Nicaragua. On the suspension of deportation issue, I think it's important to note at the outset that the arguments you're hearing today from petitioner are essentially new. He's making a jurisdictional attack based on the contents of the order to show cause. That's not the argument that he presented in his brief. It's not the argument that he presented to the agency. The question at all times until today has been about the applicability of the stop time rule, which, of course, is governed by the plain language of the statute. But even if you set the failure to exhaust aside, even if you set the waiver in the opening brief aside, even if he's right as to jurisdiction on the order to show cause, it doesn't help him because this court has held and others have held that the jurisdictional piece of this puzzle can be cured by a hearing notice. I think even in petitioner's 28-J letter, he says as much. So that cures any jurisdictional problem that he now has. And it still doesn't help him with respect to the stop time rule because, as your honors have noted, former Section 242, Big B, A1 allows the time and place of a deportation hearing to be provided in the order to show cause or otherwise. And it's that or otherwise language that's really critical. That's what sets this case apart from Ms. Chavez, from Pereira. And, in fact, you know, in Pereira, Justice Sotomayor recognized that this is an apples to oranges comparison between the old statute and the new statute, the procedures that were allowed before ERIRA and the procedures that are now in place following ERIRA. So for that reason, petitioner's reliance on Pereira and Ms. Chavez is really misplaced. Those cases aren't controlling here. What is controlling is the plain language of the statute. Ms. McKay, if I can, let me just ask. It seems that it's clear that, as I've already noted in my question to Mr. Garcia, that the 2nd, 5th, 7th, 10th and 11th circuits have all addressed this issue, have all rejected the argument of the petitioner here. And I know that in unpublished opinions, this court, the 9th Circuit, has previously rejected those, although it's not yet been a published opinion. But in terms of the matter of just a public policy consideration, I think that's really what Mr. Garcia is suggesting, that there should not be any difference between an order to show cause and a notice to appear. And this just implies that Pereira should apply to both. What is your response in terms of a public policy? What is your argument here? So, public policy, of course, is a consideration. I don't think that it trumps the plain language of the statute, though. In Pereira and in Ms., if you look at both the majority and the dissents, they do recognize that there were differences. And, in fact, not just in the suspension of deportation or in the order to show cause notice to appear charging document context, but there were a lot of differences between the old statute and the new statute. That's just the reality. I don't think that, again, as a public policy matter, I think that argument turns on agency jurisdiction. What he's saying is that that order to show cause didn't give the agency any right to do anything in the case because it didn't contain a date and time, which is how I understand his argument. Then, with the service of the hearing notice in 1996, any defect there was cured. So, I think that public policy argument goes away for him at that point. And I don't think that it relates to the stop time rule, which, again, is really the key in terms of eligibility for relief. The stop time rule and the statute and Pereira's transitional rules still say what they say. And they say that an order to show cause stops time. And his order to show cause came, excuse me, was served on him about four years after he entered, which is three years short of what he needed for suspension of deportation. And I note that in the Supreme Court in this chair, there's language that speaks as to when Congress adopted a rare, everyone understood that it required a single, fully compliant document to trigger the stop time rule. And I gather the position of the government here is that a single, fully compliant document in the context of a notice to appear would require notice and time, but that order to show cause doesn't include those provisions, essentially. That is correct because, again, under the statute, under the former statute, it allows time and place to be in the order to show cause or otherwise. And it's that or otherwise language that was removed at the time that Congress passed a rear and changed all of the procedures. They removed that language and they could have left it in, but they didn't. And I think that that's significant and that it's that language that really, again, this stop time issue turns on that language and that distinction between the former statute and the statute that we have today. Thank you. And I'm happy to answer questions if the court has questions about withholding and torture convention. I would be happy to discuss that. But if there are no questions, I'm also happy to submit on our brief. Thank you. Any other questions? Thank you. Thank you. Thank you, Mr. Garcia. Yes, I can respond. Number one, thank you, Judge Benda. I think you understood that it is a public policy type argument that I'm making. I'm not arguing that just this jurisdictional argument that the government seems to think I'm making. I can see that jurisdiction vests, but that is a different question with respect to the stop time trigger rule. I think if you look at the arguments I'm making, these are the same type of policy arguments that the government made before the U.S. Supreme Court on two occasions in Pereira and Ms. V. Chavez. They were arguing, like I'm arguing, that the stop time trigger rule is cured upon the service of a hearing notice. And that's what I'm arguing. So they've made the same argument I'm making now in Ms. V. Chavez. Excuse me. So, again, I'm not making a jurisdictional argument. I'm arguing with respect to when the stop time trigger rule applies. And like the government actually just stated, she made the argument right now that jurisdiction is cured upon the service of the time and place of proceedings. And all I'm saying is the service of the time and place of proceedings is when the stop time trigger rule should apply. But, and again, I'm arguing that in substance, a notice to appear and the order show cause are identical. Nothing can happen until that time and place is provided to the alien and no legal consequences attached before that period. And the Ms. Chavez court made that clear. So before that, it's just a piece of paper with no legal consequence other than vesting jurisdiction with the court. But, again, it does not trigger the stop time rule for cancellation or, excuse me, for suspension of deportation. I'll submit on that, Your Honor. Thank you. Great. Thank you both for your argument. We are adjourned for the day. Case is submitted. Thank you.
judges: LEE, THOMAS, Bennett